# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MARK V. GRIMES,**

        **Plaintiff,**

**-vs-**                                                            **Case No. 6:11-cv-568-Orl-31DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on September 19, 2006[1], alleging an onset of disability on December 16, 2003, due to hip joint replacements, and other arthropathies,

---

[1] Plaintiff cites to the application date of February 21, 2007 listed on the Application Summary report. R. 116-21.

back disorder, affective disorder. R. 15, 55-58. Prior to this alleged disability onset date, Plaintiff had been receiving disability benefits since 1998[2]. R. 15. The previous cessation of benefits terminated as of September 2002[3], and was subsequently denied on reconsideration and after a hearing in front of Administrative Law Judge P. Jones on April 25, 2003; the Appeals Council denied review on March 24, 2004. R. 15. The cessation decision apparently became final[4] without appeal to a district court, and Plaintiff filed new applications for DIB and SSI benefits on October 8, 2004, which were denied initially on December 14, 2004 and apparently not appealed. R. 15.

Plaintiff filed a new application on September 19, 2006, alleging he was disabled as of December 16, 2003; this application was denied initially and upon reconsideration. R. 55-66, 72-78, 116-21. Plaintiff requested a hearing, which was held on August 26, 2009, before Administrative Law Judge Robert D. Marcinkowski (hereinafter referred to as the "ALJ"). R. 28-54. In a decision dated October 16, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision; he also stated that there was no basis for reopening the prior adverse determinations. R. 15, 25-26. Plaintiff timely filed a Request for Review of the ALJ's decision which the Appeals Council denied on February 25, 2011. R. 1-5. Plaintiff filed this action for judicial review on April 7, 2011. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was last insured for DIB on December 31, 2007. R. 122-27. He was age forty-one at his alleged onset date, age forty-five when his insured status expired, and forty-seven years old at the time of the hearing. R. 116. He has a tenth grade education and past relevant work history repairing transmissions and installing liners in ambulances. R. 33-35, 131, 135.

---

[2]The SSI claim had been denied for "excess resources," not on the basis of a disability determination since the standards are the same.

[3]The SSA Field Report states that Plaintiff's benefits ceased in September 2002 and an ALJ affirmed the cessation of disability decision dated December 15, 2003. R. 129.

[4]*See* 20 C.F.R. §§ 404.955, 416.1455.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pain from arthritis in both hips which led to them being replaced, broken pelvis, ruptured discs in back, twisted left knee which pops, numbness in the right foot, circulation in the left leg, and mental stress from the pain. R. 37-42, 134, 165, 181. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered a back disorder with radiculopathy, osteoarthritis of the hips status-post arthroplasty, arthropathy, and status-post fractured left knee tibial plateau, which were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 18-19.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work except that he needed to alternate sitting and standing every 30 minutes, could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and never climb ladders, ropes, and scaffolds. R. 18-23. In making this determination, the ALJ found that Plaintiff's allegations regarding his subjective complaints were "not credible" to the extent that his allegations were inconsistent with the ALJ's RFC. R. 20. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 23. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a food and beverage order clerk and surveillance system monitor. R. 25. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 25.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by finding he had the RFC to perform sedentary work contrary to his treating doctors' statements. Second, he claims the ALJ erred in applying the pain standard and evaluating his credibility. Third, Plaintiff contends the ALJ erred by improperly relying on flawed vocational expert testimony. For the reasons

that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not

have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

### A. RFC and the treating physicians' opinions

Plaintiff claims that the ALJ should not have found him able to perform sedentary work after rejecting the opinions of Plaintiff's physicians, Dr. Cox, Dr. Mercado, Dr. Stein, which precluded the performance of sedentary work. The Commissioner concedes that the ALJ did not rely on any particular opinion because he chose "not to adopt any particular assessment" and "*independently* evaluated the evidence to find that Plaintiff's combined severe back, hip, and leg impairments, all of which caused physical limitation, reduced his RFC to a range of sedentary work but not to disabling levels." R. 18-23 (emphasis added).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); see also 20 C.F.R. § 404.1527(d)(2). Generally, a treating source's opinion is given more weight than those of other sources since this source is likely to be from the medical professional most able to provide a detailed, longitudinal picture of a claimant's medical impairments. See 20 C.F.R. § 404.1527(d)(2); *Crawford v. Commissioner,* 363 F.3d 1155, 1159 (11th Cir. 2004) ("It is well established that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown.")

Plaintiff argues that the ALJ rejected the opinions of every single medical source of record without sufficient analysis and instead rely solely upon his own lay opinion of a claimant's residual functional capacity. The Commissioner argues that the ALJ provided good reasons, based on substantial evidence, for declining to adopt any particular medical opinion.

The ALJ rejected the opinions from Plaintiff's treating physicians because he found that the opinions were inconsistent with the doctors' own examination records, as well as with the evidence as a whole. R. 21-22. The rejected the opinions of four of Plaintiff's doctors: his orthopedist, his family doctors, and an examining orthopedist, all of whom opined that Plaintiff had too many orthopedic limitations to work:

In October 2003, the record at FMS indicated that the claimant had continued medical disability, and was unable to work, due to OA of the left knee and chronic back pain. (Exhibits 4F/9 and 6F/ll). In January 2004, Dr. Cox also opined that the claimant was significantly disabled. (Exhibit 13F/3). In March 2006, Dr. Cox further opined that the claimant was significantly disabled and unable to work due to bilateral total hip arthroplasty for OA of the hips, along with lumbar disc herniation with bilateral lower extremity radiculopathy manifested by pain and numbness. (Exhibit 2F/2). Moreover, in May 2007, Dr. Cox opined that the claimant was temporarily totally disabled due to disc herniation at the LS-S 1 level, with mild canal stenosis at the L4-L5 level, along with a history of bilateral total hip arthroplasty bilaterally, in addition to an old left tibial plateau fracture. (Exhibits 12F/5 and 13F/2). Furthermore, in March 2009, the record at WOFMC [Dr. Mercado] indicated that the claimant had a decreased ability to work and ambulate. (Exhibit 28F/3). Additionally, in August 2009, a medical source statement completed by Dr. Stein, an orthopedist, indicated that the claimant was unable to work full time in a competitive job on a sustained basis. (Exhibits 29F and 30F).

R. 21. Of the four physicians who treated Plaintiff, Dr. Cox saw Plaintiff for over a decade for his various orthopedic problems: bilateral hip replacements, fractured tibular, and herniated disc. Dr. Stein, also an orthopedist, examined Plaintiff one time to offer his recommendation for treatment. The ALJ specifically rejected the opinions of Dr. Cox and Dr. Stein as not supported by the medical records:

> [I]n January 2004, Dr. Cox opined that the claimant could lift or carry as much as 20 pounds at a time, and that he should avoid only prolonged standing, walking, and sitting. (Exhibit 13F/3). When considering the medical evidence in its entirety, Dr. Cox has also overstated the extent of the claimant's limitations. In June 2008, Dr. Cox changed his opinion and stated that the claimant could only lift or carry 10 pounds occasionally, but stand or walk for only less than 1 hour in an 8-hour workday, and sit for only 4 hours in an 8-hour workday. (Exhibits 19F and 2IF). In January 2008, the record at WOFMC indicated that the claimant had good muscle strength, good straight-leg raise tests, good ranges of motion, no neurological abnormalities, and no musculoskeletal abnormalities, except for tension in his back muscles. (Exhibit 24F/2). Also, in June 2008, Dr. Cox found the claimant with tenderness and spasm in his lower back, but with no pain or instability with stress of the sacroiliac joint. Dr. Cox also found the claimant with crepitation of the left knee, but with no ligamentous instability. (Exhibit 27F/2). The undersigned finds that Dr. Cox's latter opinion, although somewhat consistent with a sedentary residual functional capacity, is too restrictive, and not supported by the medical evidence as a whole.
> * * *
>
> By contrast, in June 2007, a medical source statement completed by Dr. Mercado indicated that the claimant could lift or carry only 5 pounds occasionally, and sit, stand, or walk for only less than I hour in an 8-hour workday. (Exhibit 20F). In June 2009, Dr. Mercado found the claimant with good ranges of motion of his hips. Also,

> x-rays of the pelvis and hips revealed maintenance of good position of the hip prosthesis, without evidence of loosening or excessive wear. Dr. Mercado also noted the claimant's report that he had bilateral hip pain only occasionally, and that it was not severe. (Exhibit 27F/l). Dr. Mercado's opinion is accorded little as weight as being inconsistent with the medical evidence as a whole and not supported by his own records.
>
> On August 25, 2009, Dr. Stein, who was referred for the examination by the claimant's attorney, examined the claimant one time, and determined that the claimant was status post bilateral total hip replacement arthroplasties, L5-S 1 tenderness, sacroiliac joint tenderness bilaterally, and tenderness over the iliac crest. Dr. Stein also found the claimant with a balanced, stable gait, a "good" range of motion of his hips, only some pain on straight-leg raise tests, and only some weakness since hip surgery, despite having thoracolumbar tenderness, in addition to instability, deformity, and tenderness of his left knee. (Exhibit 29F). Dr. Stein further opined that the claimant would be unable to sit for any sufficient length of time to be able to do a sedentary type of job without interruption. . . . On August 25, 2009, a medical source statement completed by Dr. Stein indicated that the claimant could lift or carry 10 pounds occasionally, but stand or walk for only less than 1 hour in an 8-hour workday, and sit for only 3 hours in an 8-hour workday. (Exhibit 30F). This residual functional capacity opinion of Dr. Stein, is accorded little weight because it is inconsistent with the evidence as a whole.

R. 22-23.

Plaintiff contends that the ALJ's rejection of Dr. Cox's opinions as "inconsistent with the record as a whole" is too ambiguous to allow meaningful judicial review. In rejecting the two orthopedists' and the family physician's opinions, the ALJ picks and chooses certain examination results while ignoring objective medical evidence of Plaintiff's impairments and the consistent treatment he received for a variety of severe orthopedic problems.

The Commissioner argues that the ALJ's decision reflects the lack of consistent medical findings or treatment to support Plaintiff's allegations of persistent and disabling limitations; during some of the period there were no abnormal findings at all and other findings show changes in the focus of his impairments due to "transient symptoms," and he did not pursue Dr. Cox recommendation to see a spine surgeon for the herniated disc. The Commissioner also contends that the ALJ was justified in rejecting the treating physicians' opinions because Plaintiff never sought more aggressive pain treatment because of his proclaimed fear of needles.

-8-

The Court notes that the ALJ did not address Plaintiff's failure to pursue more pain management undercutting the seriousness of his maladies, and general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ. *See Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003); *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001); *Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001); *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985); *see also Burlington Truck Lines Inc. v. United States*, 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962) (the court "must judge the propriety of such actions solely by the grounds invoked by the agency [and] if those grounds are inadequate or improper, the court is powerless to affirm the administrative action").

The Commissioner also cites case law for the proposition that "a doctor's report that merely repeats the assertions of a patient whom the ALJ does not find credible is not objective medical evidence and should not receive significant weight." Doc. 17 at 12 (citing 20 C.F.R. §§ 416.928, 416.929). However, Plaintiff's physicians are not merely "repeating" his assertions that he is disabled. There is a plethora of medical evidence of Plaintiff's myriad orthopedic problems, beginning with bilateral hip replacements in 1998 and 1999, a fractured tibial plateau in his left knee in December 2000, a broken pelvis from an ATV accident in 2001, and a herniated disc diagnosed in November 2002, although Plaintiff was experiencing lower back pain since the ATV accident in 2001. Plaintiff continued to complain of lower back pain in 2001 and knee pain beginning in 2000, and sought treatment for these complaints whether from the orthopedist, Dr. Cox, or his family physicians. His orthopedic problems never abated, but he could not afford to see a spine surgeon for the herniated disc, despite the strong urging from his orthopedist.

In November 1998, Dr. Cox first examined Plaintiff for complaints of hip pain, which Dr. Cox noted was not from any systemic diseases. R. 250. An MRI showed that Plaintiff had avascular necrosis involving both hips, but conservative treatment with medications did not work and in May 1999, Plaintiff had a total hip replacement of the left hip by Dr. Cox. R. 248. Three months later in

August 1999, Plaintiff had the right hip replaced. R. 246. Plaintiff fell down the stairs at home in December 2000 and fractured the left medial tibial plateau of his left knee. R. 240. Dr. Cox recommended surgery as the best treatment option because Plaintiff would be more likely to have traumatic arthritic changes with the tibial plateau fragment, but Plaintiff refused the surgery; the knee healed but continued to cause him pain. R. 241-42.

On a follow up appointments for his hip replacements in January and April 2000, Plaintiff began complaining of lower back pain, stiffness and he had decreased flexion of the lumbar spine. R. 243-44. Dr. Cox believed the lower back pain was secondary to his arthritis. R. 245. Plaintiff was subsequently injured in an ATV accident in July 2001 and broke his pelvis; the fractures were healing and had not affected the hip prostheses. R. 253. Plaintiff experienced increasing lower back pain ever since that time. R. 219.

In August 2001, Plaintiff began complaining of occasional pain in his back and right lower extremity radicular symptomatology. R. 256. By October 2002, Plaintiff continued to experience frequent lower back pain and stiffness with numbness of the lateral aspect of the right foot. R. 252. In November 2002, Dr. Cox ordered an MRI of Plaintiff's lumbar spine to find the cause of his lower back pain. The MRI showed a broad based right paracentral herniated disc at L5-S1, which causes deforminty of the dural sac and some deviation of the S1 nerve root, and mild canal stenosis at L4-5. R. 216, 278 (MRI Report). Dr. Cox suggested epidural blocks, and advised Plaintiff that if conservative treatment failed, then surgical intervention might be necessary. R. 216.

On January 6, 2004, Plaintiff returned to Dr. Cox with complaints that he had tried to work, but he could not tolerate prolonged sitting or standing. R. 274. Dr. Cox noted tenderness in the lower lumbar area, mild paraspinal muscular spasm, restriction of lumbar flexion, pain with lumbar extension, and pain with straight leg raising on the right. R. 274. Dr. Cox diagnosed herniated lumbar disc at L5-S1, left lumbar radiculopathy, and status-post bilateral hip replacements, and he recommended Plaintiff avoid prolonged sitting, standing, and walking, and no lifting over 20 pounds.

R. 273. He recommended that Plaintiff be evaluated by a spine surgeon regarding the herniated lumbar disc with left lumbar radiculopathy. R. 273.

From 2002 to 2005 Plaintiff continued to see his family doctor, Dr. Garner at Family Medical Specialist (a/k/a JSA Medical Group). R. 258-59, 261. In late 2004 and 2005, he continued to complain of chronic back pain and he was prescribed pain medication, Hydrocodone and Flexeril, during the 2004 to 2005 time period and was referred to pain management. R. 226, 228, 230-36. Plaintiff changed to Dr. Mercado's practice in January 2006, where Plaintiff was seen for complaints of lower back pain. R. 219. On examination, Dr. Mercado noted that there was atrophy of the thigh, spasms over the hips bilaterally, and decreased sensation of the right lateral thigh. Dr. Mercado diagnosed osteoarthritis, status-post bilateral hip replacements, neuropathy involving the right foot, and status-post fracture of the left knee, and prescribed Hydrocodone, Flexeril, and Naprosyn. R. 219. Plaintiff saw Dr. Mercado regularly through June 29, 2007. R. 214, 221-23, 374-75.

Plaintiff returned to see Dr. Cox on March 3, 2006; the treatment notes indicate Plaintiff was having a great deal of difficulty secondary to his herniated disc in his lower back, but for financial reasons he had not been able to see the spine surgeons as instructed. R. 273. On examination, Plaintiff had paralumbar muscular spasm and tenderness, and positive straight leg raising, bilaterally, at 50 degrees. R. 273. Dr. Cox prepared a letter stating that Plaintiff was followed for a herniated lumbar disc with radicular pain in the lower extremities with pain and numbness and a history of bilateral hip replacements. R. 213. Dr. Cox opined that Plaintiff was totally disabled and could not participate in any work activities at that time. R. 213.

In May 2007, Plaintiff complained of lower back pain with frequent numbness of the right lower extremity and weakness of both lower extremities. R. 317. Plaintiff reiterated that he had been unable to see a spinal surgeon for further work-up because of his lack of finances. R. 317. Dr. Cox's examination noted marked restriction in motion of the lumbar spine, pain with both flexion and

extension, positive straight leg raising bilaterally, and some weakness involving both lower extremities. R. 316-17.

Dr. Cox completed a Spinal Impairment Questionnaire dated October 19, 2007, in which he diagnosed status-post bilateral hip replacements, old fracture of left tibial plateau, and herniated lumbar disc. R. 412-18. Clinical findings included limited range of motion in the lumbar spine, tenderness of the lumbar spine, muscle spasms in the lumbar spine, sensory loss, muscle weakness, and an abnormal gait with a limp, with a fair prognosis. R. 412-13. Dr. Cox noted the MRI showed a broad based right paracentral herniated disc at L5-S1 and mild canal stenosis at L4-5; his primary symptoms were pain in the hips, back, and right leg. R. 414. Dr. Cox opined that Plaintiff was able to sit 4 hours total and stand/walk less than 1 hour total in an 8-hour workday; when sitting, he needed to get up and move around every 30 minutes for 5 minute intervals; he could occasionally lift and carry up to 10 pounds, but never more than 10. R. 415-16. Dr. Cox also opined that Plaintiff's experience of pain, fatigue, or other symptoms were "frequently" severe enough to interfere with his attention and concentration, and Plaintiff would be absent from work two to three times a month as a result of his impairments or treatment. R. 416-17.

In June 2008, Plaintiff was seen by Dr. Cox for follow-up, complaining of back pain with lower extremity radiculopathy. R. 211. Dr. Cox reported that there was evidence of tenderness and spasm involving the lower back, pain with straight leg raising to 50 degrees bilaterally, and crepitus of the left knee; Dr. Cox diagnosed herniated lumbar disc, status-post bilateral hip replacements, and status-post old tibial plateau fracture on the left. R. 211. Dr. Cox completed a Hip Impairment Questionnaire dated June 2, 2008, with the same diagnosis and similar clinical findings as before which included limited motion in the lumbar spine, tenderness of the back, hips, and left knee,

abnormal posture of the spine, Trendelenburg gait[5], muscle atrophy of the left lower extremity, weakness of the left lower extremity, muscle spasms in the lumbar spine, crepitus of the left knee, and pain with flexion and extension. R. 430-36. Dr. Cox cited to MRI findings showing a herniated lumbar disc and x-rays showing bilateral hip prosthesis and old left tibial plateau fracture, which supported the diagnoses. R. 431. Dr. Cox opined virtually the same limitations as he had before on the Spinal Impairment Questionnaire. R. 433-35. On June 10, 2009, Plaintiff was seen only for a check-up of his hip prostheses, which were found to be doing well. R. 468

Dr. Stein, orthopedic surgeon, examined Plaintiff on a single occasion in August 2009, as suggested by Plaintiff's counsel to suggest any alternative treatment. R. 273. Dr. Stein reviewed Plaintiff's medical records from Dr. Cox and also performed his own examination of Plaintiff which revealed pain on straight leg raising, resistance on abduction of the hips with weakness that was consistent with the abductor muscle weakness, instability of the left knee with marked valgus laxity on valgus stress and major tenderness along the medial joint line with clinical deformity from the previous proximal tibial plateau fracture, tenderness in the upper back at T3-4, T4-5, and T5-6, and tenderness at L5-S1. R. 473-74. On a Multiple Impairment Questionnaire, Dr. Stein diagnosed Plaintiff status-post tibial plateau fracture on the left, herniated lumbar discs, and rheumatoid arthritis based on clinical findings of thigh tenderness bilaterally, low back tenderness, and instability of the knee, and MRI findings that supported the diagnosis. R. 475-77. Dr. Stein opined that Plaintiff could sit for 3 hours total and stand/walk less than 1 hour total in an 8-hour workday; he needed to get up and move around every 30 minutes and not sit again for 5 to 10 minutes; he could occasionally lift/carry up to 10 pounds, but never more than that. R. 477-78. Dr. Stein also opined that Plaintiff's

---

[5]A walk resulting from a disturbance in the function of the hip abductors. During stance phase of the involved side, the pelvis cannot be stabilized and therefore drops on the side of the swinging lower limb. To compensate for a Trendelenburg gait, the patient avoids the drop of the pelvis by lateral trunk bending to the side of the supporting limb (i.e., the involved side). A waddling gait results when such compensatory trunk bending occurs bilaterally. Orthopaedic Dictionary, Stanley Hoppenfeld, M.D., and Michael Zeide, M.D., J.B. Lippincott Company, 1994 ("OD"), p. 410-411.

pain, fatigue, or other symptoms were "frequently" severe enough to interfere with his attention and concentration, and Plaintiff was incapable of even low stress due to his severe pain. R.480. The orthopedic surgeon estimated that he would be absent from work, on the average, more than three times a month as a result of his impairments or treatment. R. 481.

While a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984), both orthopedic specialists who examined Plaintiff opined that he had sitting/standing/walking restrictions which would preclude him for preforming even sedentary work. As Plaintiff points out, the ALJ refers to several "normal" musculoskeletal findings, *e.g.,* "no instability in the sacroiliac joint" or "ligamentous instability" when those particular areas were either not in issue or not the sole impairment Plaintiff complained of.

The orthopedists' opinions were based on objective medical evidence – the MRI showing Plaintiff had a herniated disc, x-rays of the left knee that Dr. Cox expected to cause arthritis, and the x-rays of fractures in Plaintiff's pelvis from the ATV accident, as well as clinical evidence of his impairments: positive straight leg tests, limp or uneven gait, thigh with tenderness bilaterally, low back tenderness, numbness in extremities, atrophy and weakness of the left lower extremity, muscle spasms in the lumbar spine, crepitus of the left knee, and pain with flexion and extension. Each of Plaintiff's treating physicians and even the SSA consultative physician recognized that Plaintiff was experiencing pain from these impairments.

The ALJ is required to consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-

-14-

articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

In this case, the ALJ should have considered Plaintiff's orthopedic impairments together rather than selectively picking out "normal" physical exam findings, for instance in Plaintiff's hip replacements, when Plaintiff was experiencing increasing pain and weakness in other parts of his skeletal frame. Although Plaintiff's hip replacements had healed properly, by 2000 he had injured his left knee – for which he should have had surgery to repair but did not – and by 2001 he had fractured his pelvis in several places; at that point his lower back also began to hurt, which was eventually diagnosed as a broad based herniated disc – another condition which should have been corrected by surgery but was not because Plaintiff could not afford it. Contrary to the Commissioner's argument, Plaintiff's inability to obtain the spinal surgery is not evidence of his lack of orthopedic impairment or pain. There are repeated references in the record to Plaintiff's inability to afford treatment, which precluded him from seeking out the spinal surgery. *See, e.g.,* R. 273. While a controllable or correctable medical condition is generally not disabling, if the claimant cannot afford the treatment and can find no way to obtain it, poverty may excuse the non-compliance. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

The ALJ's finding that the opinions from Dr. Cox and Dr. Stein, and Plaintiff's treating family physicians (Drs. Mercado and Garner), were not supported by the "medical evidence as a whole" (R. 22), was not based on substantial evidence. Additionally, the ALJ's determination of Plaintiff's RFC that he could perform sedentary work except that he needed to alternate sitting and standing every 30 minutes, with other exertional limitations, failed to consider or include Dr. Cox (or Dr. Stein's) restrictions, and the ALJ's RFC determination was not based on substantial evidence.

**B.     Pain and credibility.**

Plaintiff asserts that the ALJ erred in evaluating his credibility regarding his pain from his impairments. Plaintiff offered extensive testimony at the hearing regarding his symptoms, limitations, daily activities, and treatment, which he argues was consistent with the record. He also argues that the ALJ erred by finding his subjective complaints not credible and in failing to provide adequate and specific reasons for discrediting his complaints. The Commissioner argues that the ALJ properly found his testimony not fully credible, and the objective evidence constitutes substantial evidence to support the ALJ's finding that Plaintiff's pain was not disabling.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was

applied"). The ALJ determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, and assessed Plaintiff's credibility in the context of determining Plaintiff's RFC.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ concluded that Plaintiff's medically determinable impairments could "reasonably be expected to cause the alleged symptoms," but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the evidence and the residual functional capacity as determined by the ALJ. R. 20. The ALJ discounted Plaintiff's credibility in part because Plaintiff was able to take care of his hygiene, prepare simple meals, do a "little" cleaning and laundry, drive, shop, manage his money, read, watch television, and visit with others. R. 20-21. Plaintiff testified that he spent most of his days "sleeping," "watching TV," or "talking to my dad." R. 43. The ALJ also discounted Plaintiff's credibility because there was no evidence that Plaintiff required the use of a cane or other assistive device for ambulation. R. 21.

Plaintiff argues that the fact that he could engage in some minimal activities of daily living such as caring for his own hygiene, preparing "simple" meals and doing "a little" bit of the household chores, does not show that he could perform a competitive day-to-day job. Doc. 16 (citing *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (holding that it was inappropriate for the ALJ to rely on only selected portions of the claimant's daily activities to find her more functional than the record viewed

"as a whole" suggested). Plaintiff also argues that there is also no direct correlation between the severity of his pain and intolerance to sitting, standing, and walking with the fact that he was not prescribed an assistive device for ambulation.

The Commissioner contends that the evidence Plaintiff presented did not confirm his testimony as to the severity of his alleged pain; although he may have had some limitations because of his severe impairments, he was still capable of performing some work-related activities. R. 19-23. However, the Commissioner does concede that "Plaintiff complained consistently of pain, and medical records routinely noted his complaints," the notations themselves are not objective medical evidence. Doc. 17 at 17. As the Court has already explained above, the ALJ failed to appropriately credit the objective medical evidence which did support Plaintiff's allegations of pain.

The Commissioner argues that "all objective imaging after Plaintiff's alleged disability onset shows no acute abnormalities." Doc. 17 at 18. That is plainly wrong. As explained above, x-rays showed fractures in Plaintiff's left knee and pelvis, as well as an MRI that showed a disc herniation at L5-S1. Dr. Cox anticipated that the knee fracture would turn to arthritis, and the disc herniation required surgery to repair; Plaintiff's muscles in the extremities had begun to atrophy. Based on these objective medical records, the Plaintiff expressed the pain he was experiencing and his physicians prescribed pain medications. Even the SSA's physician who performed a consultative examination recommended that Plaintiff be referred to a "pain management specialist for more aggressive pain management control." R. 294. Accordingly, the ALJ's discounting of Plaintiff's credibility, particularly as to his pain, was not based on substantial evidence.

**C. VE testimony**

Plaintiff also argues that the ALJ's hypothetical question was incomplete because the ALJ failed to include all of Plaintiff's impairments, and the VE's testimony was flawed, thus, the ALJ's

reliance on it was error. The Commissioner argues that the ALJ properly assessed Plaintiff's RFC and consequently the ALJ's reliance on the hypothetical was appropriate.

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

As explained above, the ALJ erred in failing to properly consider the treating physicians' opinions in determining Plaintiff's RFC. Because the RFC did not include all of Plaintiff's limitations, when it was included in the hypothetical, the hypothetical was incomplete. The ALJ's reliance on the VE's answer to the incomplete hypothetical was substantial error.

## IV. CONCLUSION

It is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June , 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy